CLERKS OFFICE US DISTRICT COURT
AT HARRISONBURG, VA
FILED

04/17/2026

LAURA A. AUSTIN, CLERK
BY: /s/ Amy Fansler
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## HARRISONBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal No. 5:13-cr-00025 |
| v. | ) | |
| | ) | |
| RONNIE MAURICE JONES, | ) | By:    Michael F. Urbanski |
| Defendant. | ) | Senior United States District Judge |

### MEMORANDUM OPINION

This matter comes before the court on defendant Ronnie Maurice Jones's pro se motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A), commonly known as "compassionate release." ECF No. 709.[1] The Federal Public Defender was given an opportunity to supplement Jones's pro se motion but declined to do so. ECF Nos. 711, 719. The government has filed a response in opposition. ECF No. 722. For the reasons stated herein, the court will **DENY** Jones's motion.

### I. Background

On November 12, 2014, Jones entered into a Rule 11(c)(1)(C) plea agreement in which he pled guilty to one count of conspiring to distribute 1000 grams or more of heroin and 280 grams or more of cocaine base in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A) (Count One); possession and distribution of heroin in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) (Count Three); and one count of knowingly possessing a firearm after having previously been convicted of a crime punishable by imprisonment for a term exceeding one

---

[1] Jones previously filed a pro se motion for a sentence reduction on December 14, 2020, that was supplemented by the Federal Public Defender on January 11, 2021. ECF Nos. 641, 649. On August 2, 2021, the court denied the motions. ECF Nos. 672, 673.

year in violation of 18 U.S.C. § 922(g)(1) (Count Four). Plea Agreement, ECF No. 282; Third

Superseding Indictment, ECF No. 122.

On Count One, Jones faced a statutory term of 10 years to life; on Count Three he

faced a statutory term of zero to 20 years, and on Count Four, he faced a statutory minimum

term of 15 years. Pre-Sentence Investigation Report ("PSR"), ECF No. 468 ¶ 115. The

minimum term of imprisonment on Count Four was increased via the Armed Career Criminal

Act ("ACCA") from zero years to 15 years because Jones was found to have three previous

convictions for either a violent felony or a serious drug offense, or both. Id.; 18 U.S.C. §§

922(g) and 924(e)(1) (2006).

Regarding his sentence under the United States Sentencing Guidelines ("USSG" or

"guidelines"), based on drug weight, Jones had a base offense level of 32. Sent. Tr., ECF No.

502 at 34.[2] His base offense level was increased by 2 points for possession of a firearm, and

by 4 points for being an organizer or leader of the conspiracy, and decreased by 3 points for

acceptance of responsibility, giving him a total offense level of 35. Id. at 34–36. Jones had 16

criminal history points, putting him in criminal history category VI. His criminal history

category together with his total offense level resulted in a guidelines sentencing range of 292

to 365 months. Id. at 35. As part of the plea proceedings, the parties agreed to a sentence of

360 months in the absence of a substantial assistance motion and to a range of 180 to 300

months if a substantial assistance motion was made and granted. Plea Agreement, ECF No.

282 at 1.

---

[2] The PSR assigned a higher drug weight to Jones that resulted in a base offense level of 34. PSR, ECF No. 468
¶¶ 37, 44. At sentencing, the court credited Jones's testimony regarding drug quantity and found the appropriate
base offense level to be 32. Sent. Tr., ECF No. 502 at 33–34.

On June 3, 2015, Jones was sentenced to 276 months of incarceration, consisting of 276 months on Count One, 120 months on Count Three, and 180 months on Count Four, all to run concurrently. J., ECF No. 473. Jones currently is housed at Federal Correctional Institution Jesup and has a projected release date of April 6, 2032.[3]

Jones seeks compassionate release based on his assertion that if sentenced today on Count Four, the ACCA would no longer apply to him and he would not be subject to a minimum 15-year sentence under 18 U.S.C. § 924(e)(1), but would be subject only to the zero to 10-year sentence under § 924(a)(2) on Count Four. Jones also argues that there is a gross disparity between his sentence and the mean and median sentences imposed upon like defendants and to actual sentences imposed upon like defendants. Finally, he argues that the 18 U.S.C. § 3553(a) factors support a sentence reduction. The government counters that there are no extraordinary and compelling reasons that warrant a sentence reduction and that even if there were, the § 3553(a) factors weight against a sentence reduction.

**II. Analysis**

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act ("FSA"), authorizes courts to modify terms of imprisonment as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not

---

[3] https://www.bop.gov/inmateloc/ (search "Ronnie Maurice Jones") (last viewed Nov. 23, 2025).

exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Accordingly, Jones's requested relief requires the court to consider (1) if he exhausted his administrative remedies; (2) if so, whether there are extraordinary and compelling reasons that warrant a reduction in his sentence; and (3) if so, what, if any, sentence reduction is appropriate after considering the applicable 18 U.S.C. § 3553(a) factors.

Jones presented evidence that he exhausted his administrative remedies and the government does not contest exhaustion. Accordingly, the court finds that Jones exhausted his administrative remedies.

## A. Jones's ACCA Sentence

Effective November 1, 2023, the United States Sentencing Commission amended the policy statement that addresses motions for sentence reduction under 18 U.S.C. § 3582(c)(1)(A) when a defendant alleges that extraordinary and compelling reasons warrant a reduction. See U.S. SENT'G COMM'N, GUIDELINES MANUAL § 1B1.13 (Nov. 2023). The revised policy statement contains a provision that addresses when an "unusually long sentence" can be a reason for a court to grant a sentence reduction under § 3582(c)(1)(A):

(6) Unusually Long Sentence.--If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed

4

at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

(c) Limitation on Changes in Law.--Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

USSG §§1B1.13(b)(6) and (c).

In Jones's case, it will be assumed for purposes of this motion that his sentence is unusually long. As he has served more than 10 years of the sentence, he has satisfied the first two criteria. The remaining question is whether a change in law has produced a gross disparity between the sentence Jones is serving and the sentence that likely would be assessed if he were sentenced today.

Under the ACCA, a defendant convicted of being a felon in possession of a firearm under 18 U.S.C. § 922(g) faces more severe punishment if he has three or more previous convictions for a violent felony or a serious drug offense. 18 U.S.C. § 924(e). The relevant part of the statute reads as follows:

In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g).

5

18 U.S.C. § 924(e)(1) (emphasis added).

In Wooden v. United States, 595 U.S. 360 (2022), the Court addressed whether a defendant's ten burglary convictions that arose from a single criminal episode occurred on different occasions for purposes of the ACCA. The defendant had been convicted in 1997 on ten counts of burglary, all of which took place on a single night when he and three other people broke into a one-building storage facility and then proceeded from unit to unit, breaking through the sheetrock walls between the units, and taking items from each of the units. 595 U.S. at 363. He was charged in a single indictment with ten counts of burglary, as prescribed by state law. Id.

Some 17 years later, in 2014, Wooden was charged, tried, and convicted of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). At the time Wooden was sentenced, in the absence of the ACCA, he faced a maximum sentence of 10 years in prison. Wooden, 595 U.S. at 363 (citing 18 U.S.C. § 924(a)(2)).[4] The government sought an ACCA enhancement, which mandated a minimum sentence of 15 years if Wooden was found to have three prior convictions for a violent felony, serious drug offense, or both, that were committed on occasions different from one another. Id. at 364 (citing 18 U.S.C. § 924(e)(1)). Without the ACCA sentence increase, the United States Probation Office recommended a guidelines sentence of 21 to 27 months. Id.

At sentencing, the parties argued about whether the ten convictions for breaking into the storage facility satisfied the ACCA requirement that prior convictions occur "on occasions

---

[4] This section of the statute was revised effective June 5, 2022, and now provides for a maximum sentence of 15 years in the absence of an ACCA enhancement. See 18 U.S.C § 924(a)(8) (2022).

6

different from one another." Id. (citing § 924(e)(1)). The district court found that the entry into each separate unit provided a discrete point at which each offense was completed and the next occurred and determined that the burglary of each unit was a separate "occasion" for purposes of the ACCA. The court sentenced Wooden to a term of 188 months, and the Sixth Circuit Court of Appeals affirmed. Id. at 364–65.

The Supreme Court reversed and remanded the case, relying on the ordinary meaning of "occasion," and on the history and purpose of the ACCA. The court reasoned that the word "occasion" commonly refers to an event, occurrence, happening, or episode, any of which might involve multiple temporally distinct activities. Id. at 367. The court gave as an example a wedding being an occasion at which different events, such as a ceremony, cocktail hour, dinner, and dancing, take place. The events do not occur at the same moment, but they are all part of the same occasion. Id. The court suggested that a barroom brawl, where a defendant hits first one, then another, then a third person, would be one occasion rather than three separate occasions. Id. at 368.

Whether offenses make up one or more occasions depends on timing, proximity of location, and the character and relationship of the offenses, with those that are closely intertwined by sharing a common scheme or purpose being more apt to compose one occasion. Id. at 369. "In many cases, a single factor—especially of time or place—can decisively differentiate occasions. Courts for instance, have nearly always treated offenses as occurring on separate occasions if a person committed them a day or more apart, or at a 'significant distance.'" Id. at 369–70 (citing United States v. Rideout, 3 F.3d 32, 35 (2nd Cir. 1993), and United States v. Riddle, 47 F.3d 460, 462 (1st Cir 1995) (per curiam)). Looking at

the way in which Wooden carried out the burglary offenses, the court concluded that, "every relevant consideration" showed that Wooden burglarized ten storage units on a single occasion, because he committed them on a single night, in a single uninterrupted course of conduct, with all the burglaries occurring at a one-building storage facility with one address. The offenses were essentially identical, and all were intertwined with the others. In addition, each burglary in some sense facilitated the next as Wooden moved from unit to unit, all in a row. Id. at 370.

The Court further found that the history and purpose of the ACCA supported a finding that Wooden's robbery of the ten storage units should be considered as a single occurrence under the ACCA. See discussion, id. at 371–75. The Court reasoned the following:

> The history of the occasions clause thus aligns with what this Court has always recognized as ACCA's purpose. Congress enacted ACCA to address the "special danger" posed by the eponymous "armed career criminal." Begay v. United States, 553 U.S. 137, 146, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008). The theory of the statute is that "those who commit a large number of fairly serious crimes as their means of livelihood" are especially likely to inflict grave harm when in possession of a firearm. Taylor v. United States, 495 U.S. 575, 587–588, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990).

Id. at 375.

Jones argues that the decision in Wooden compels the court to find that if he were sentenced today, he would be entitled to a shorter sentence than the one assessed in 2015. He claims that after Wooden, two of his predicate offenses would now be considered to have occurred on a single occasion, meaning he would have only two, rather than three, qualifying predicate offenses. Thus, he argues, the ACCA would no longer apply to him and his statutory sentencing range for his three sentences would be 10 years to life (based on Counts One and

8

Three) rather than 15 years to life when the ACCA is applied to Count Four. He asserts that this is an extraordinary and compelling reason warranting a reduction in his sentence. However, Wooden does not offer Jones the relief he seeks.

Jones's sentence was enhanced under the ACCA for three prior convictions on drug distribution offenses. The first was for an arrest that occurred on June 7, 1998, when Jones was stopped and arrested for driving on a suspended license. A search of his car revealed that he was in possession of crack cocaine and $400 in cash and he was charged and convicted of possession with intent to distribute cocaine. PSR, ECF No. 468 ¶ 67. Jones does not contest that this conviction is a valid predicate offense for the ACCA.

Jones has two other convictions for which he was arrested on August 20, 1998, pled guilty on November 3, 1998, and sentenced on February 12, 1999, in Fairfax County Circuit Court in Fairfax, Virginia. Id. ¶ 68. Jones was sentenced to "10 years incarceration, 7 years suspended per count (concurrent)." Id. There is no further description of these offenses in the record, but Jones said that the two drug sales occurred during a "three or four day span in August of 1998," and "[b]oth deliveries involved the distribution of cocaine to the same confidential informant, in the same locality, within the span of a week." Mot. for Sent. Reduction, ECF No. 709 at 11–12. Jones argues that "[t]ogether, these factual commonalities align seamlessly with the guidance proffered by the Supreme Court, denoting a closely knit structural and temporal array, indicative of a single criminal episode or occasion." Id. at 12.

Jones acknowledges the statement in Wooden, 595 U.S. at 370, that "[c]ourts … have nearly always treated offenses as occurring on separate occasions if a person committed them a day or more apart, or at a 'significant distance[,]'" but argues that the statement is only a

starting point and not a "hard-and-fast" rule. Mot. for Sent. Reduction, ECF No. 709 at 13–14. Jones also acknowledges that the Fourth Circuit has found that offenses committed several days apart have been found to be committed on separate occasions. See United States v. Daniels, No. 21-4171, 2022 WL 1135102, at *1 (4th Cir. Apr. 18, 2022) (per curiam) (finding three offenses committed on April 15, April 20, and May 8 occurred on three separate occasions).

Jones argues that the use of the phrase "nearly always" leaves room for exceptions to the general rule, but he does not explain why his case should be an exception. He claims that the drug sales were "intrinsically linked components of a single, unified scheme to distribute narcotics." Mot. for Sent. Reduction, ECF No. 709 at 19. However, the only evidence in the record is Jones's description of events in which he said he sold drugs to a confidential informant twice in the span of a week. There is nothing about this description of events that distinguishes it from Daniels, 2022 WL 1135102, or other cases where courts have found that offenses separated by a few days were separate occurrences. See United States v. Dudley, No. 22-4037, 2023 WL 2597601 (4th Cir. 2023) (finding offenses were committed on separate occasions when three days passed between first cocaine distribution offense and next offenses); United States v. Thompson, No. 1:12-CR-434, 2023 WL 4459604, at *4–5 (M.D.N.C. July 11, 2023) (finding two burglaries committed hours apart on the same day and a third burglary committed a few days later, all at different locations, were separate occasions); and Culbertson v. Gilley, No. 6:22-110-KKC, 2022 WL 1785616, at *4 (E.D. Ky. June 1, 2022) (finding drug sales made on April 25, May 8, and May 13 were separate offenses).

Jones also cites to several cases where courts have found that offenses committed over an extended period of time were related for various purposes, but none of the cases he cites address whether the offenses were valid predicates for purposes of the ACCA. For example, many of the cases deal with courts' assessments of whether criminal activity could be considered relevant conduct for purposes of sentencing. See Knox v. United States, No. 03-CV-4026-JPG, 2005 WL 1657127 (S.D. Ill. July 13, 2005); United States v. Sklar, 920 F.2d 107, 110 (1st Cir. 1990); and United States v. Gilbert, 173 F.3d 974, 978 (6th Cir. 1999). Another case he cites dealt with whether defendants' acts were committed in furtherance of a conspiracy. See United States v. Vance, 722 F.3d 918, 932–33 (7th Cir. 2013). Still other cases Jones cites were civil matters with no relevance to his argument. See Terry v. Ashcroft, 336 F.3d 128, 145 (2d Cir. 2003); Vasquez v. Ranieri Cheese Corp., No. 7-CV-464-ENV-WP, 2010 WL 1223606 (E.D.N.Y. Mar. 26, 2010).

Applying the reasoning in Wooden to Jones's 1998 drug convictions, the offenses do not present an exception to the rule that drug sales committed within a few days of each other are separate offenses for purposes of the ACCA. Accordingly, the court finds that the drug offenses on which the Count Four sentence increase was based remain valid enhancement predicates for purposes of the ACCA.

Moreover, even if the ACCA were not applied to increase Jones's sentence, his statutory sentencing range remains 10 years to life based on Count One, and his guidelines sentence would still be 292 to 365 months. His sentence of 276 months is within the statutory sentencing range and below the guidelines range.

11

In addition, the statute, § 924(c), was amended by Bipartisan Safer Communities Act ("BPSA") on June 25, 2022, Pub. L. 117-159, 136 Stat. 1313. Prior to enactment of the BPSA, violations of 18 U.S.C. § 922(g), without the ACCA enhancement, were subject to a maximum sentence of 10 years. See 18 U.S.C. § 924(a)(2) (2006) ("Whoever knowingly violates subsection (a)(6), (d), (g), (h), (i), (j), or (o) of section 922 shall be fined as provided in this section, imprisoned not more than 10 years, or both."). As part of the BPSA, the statute was amended, and the reference to § 922(g) was deleted from § 924(e)(2). The BPSA increased the maximum penalty for violation of § 922(g), in the absence of an ACCA enhancement, to 15 years. The increased penalty is located at § 924(a)(8) ("Whoever knowingly violates subsection (d) or (g) of section 922 shall be fined under this title, imprisoned for not more than 15 years, or both.") Therefore, even if the ACCA enhancement were not applied, Jones's sentence of 180 months on Count Four would still be within the statutory sentencing range, albeit at the top of the range.

On the facts presented here, Jones cannot show that there is a gross disparity between the 276-month sentence he received in 2015 and the sentence he would receive today, after the Supreme Court's decision in Wooden. His sentence remains within the current statutory sentencing range for his offenses and below the guidelines range. Accordingly, he has failed to demonstrate an extraordinary and compelling reason for a sentence reduction.

Jones also argues that the sentence he received in 2015 was higher than sentences imposed on similarly situated defendants. He cites statistics from the United States Sentencing Commission showing that the average sentence for a § 922(g) offense in 2017 was 64 months, and that the average sentence in 2019 was 58 months. Mot for Sent. Reduction, ECF No. 709

12

at 25. He also asserts that the average sentence for violation of §§ 846 and 841 in 2018 was 95 months and in 2019 was 110 months. Id. In addition, he points out that the average sentence for murder between 2016 and 2021 was 255 months and argues that his sentence of 276 months is too long because his crimes were not as severe as murder. Id. at 26. While these statistics might be helpful in some contexts, they do not lead the court to conclude that Jones is entitled to a sentence reduction. Under the policy statement in the guidelines, reducing a sentence because it is "unusually long" can only occur in response to a change in the law and as discussed above, Wooden did not cause a change in the law that would affect Jones's sentence.

Moreover, the statistics he cites do not take into account the parties' bargaining positions at the time they negotiated the plea agreement. The government agreed to dismiss Count Two of the indictment, which charged Jones with knowingly possessing a firearm in furtherance of a drug trafficking crime. Plea Agreement, ECF No. 282 at 3; Third Superseding Indictment, ECF No. 122 at 2–3. The decision to dismiss Count Two took a mandatory, consecutive 60-month sentence off the bargaining table. See 18 U.S.C. § 942(c). In addition, the government chose not to pursue a sentence enhancement under 21 U.S.C. § 851 based on Jones's two prior drug-trafficking convictions.

Thus, when accounting for the possible penalties Jones faced in 2015 and that he would continue to face today, the difference between his sentence and the mean or median sentences for similar offenses does not indicate that there is a gross disparity between his sentence and other sentences imposed for similar offenses. While Jones's sentence was longer than the mean and median sentences for similar offenses, the parties agreed to the sentencing range after

considering factors unique to Jones and his criminal history. Accordingly, Jones cannot show a gross disparity between the sentence he received in 2025 and the sentence he likely would receive today based on average sentences for the offenses.

### B. 18 U.S.C. § 3553(a) Factors

Because the court determined that Jones has not shown an extraordinary and compelling reason for a sentence reduction, it need not assess the § 3553(a) factors. See United States v. Bethea, 54 F.4th 826, 833 (4th Cir. 2022) (describing the "extraordinary and compelling" reasons for relief as a threshold for eligibility); United States v. Elias, 984 F.3d 516, 519 (6th Cir. 2021) ("[D]istrict courts may deny compassionate release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others.")

### III. Conclusion

For the reasons set forth above, the court **DENIES** Jones's motion for a sentence reduction, ECF No. 709.

An appropriate order will be entered.

It is so **ORDERED**.

Entered:    April 17, 2026

Michael F. Urbanski
U.S. District Judge
2026.04.17 12:09:26
-04'00'

Michael F. Urbanski
Senior United States District Judge

14